UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE LINGENFELTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06CV31 FRB |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF THE ANSWER

Nature of Action and Prior Proceedings

This suit involves two applications made under the Social Security Act (the Act). The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq (Tr. 110-13). The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq (Tr. 332-35). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under section 205.

Plaintiff's applications were denied (Tr. 55-56, 86-90, 319-23). On May 25, 2005, following a hearing, an administrative law judge (ALJ) rendered a decision, in which she found that Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 7-26). On November 4, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Statement of Facts

Plaintiff filed his applications for disability benefits under Title II and Title XVI on September 17, 2003 (Tr.110-13, 332-35). He stated that he was born in July 1960, and alleged that he became disabled beginning September 1, 2002 (Tr.110, 332). In his Disability Report, he alleged disability due to depression, suicidal ideation, crying spells, mood swings, panic attacks, anxiety, impulsiveness, social withdrawal, difficulty concentrating, racing thoughts, lack of motivation, poor follow through, inconsistent sleep patterns, fatigue, poor self-esteem, back pain, leg pain, hip pain, muscle spasms, and muscle cramps (Tr. 179, 186). In accordance with the local rules for the Eastern District of Missouri, Defendant relies on the Statement of Facts contained in Plaintiff's brief with the following additions:

Plaintiff was prescribed lithium in the fall of 2002, stated in November 2002 that it was helping, but reported in January 2003 that he had stopped taking it (Tr. 295-97). Plaintiff was prescribed ibuprofen for his alleged back pain in October 2004, but refused to take it because he wanted Celebrex, a prescription that was not covered (Tr. 200, 207). On September 29, 2004, Plaintiff presented to a clinic and reported that he had been diagnosed with hypothyroidism one year prior (Tr. 205, 273). He had waited nearly one year to purchase the medication prescribed for this condition (Tr. 205). Plaintiff failed to appear for a scheduled appointment in September 2004 (Tr. 242). In August 2004, Plaintiff was prescribed Ritalin, but did not fill his prescription (Tr. 248).

On December 23, 2003, Plaintiff was examined by James D, Reid, Ph.D. (Tr. 249-50,268-71). Dr. Reid stated that Plaintiff was "very vague and impossible to pin down" regarding his use of drugs and alcohol (Tr. 250, 268). Dr. Reid specifically stated that he did

not believe Plaintiff was being forthcoming regarding his substance and alcohol problems (Tr. 268).

## Statement of the Issue

The issue is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole.

## Argument

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. See Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997). If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The Eighth Circuit has stated that the court defers "heavily to the findings and conclusions of the SSA." Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

Prior to rejecting a claimant's subjective complaints, the ALJ is required to make an express credibility determination explaining why he does not fully credit the claimant's complaints. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996). The 8th Circuit has repeatedly stated that, where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel 226 F.3d 969,

972 (8th Cir. 2000), (citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000)); McKinney v. Apfel, 228 F.3d 860, 864 (8th Cir. 2000).

The ALJ considered many factors in assessing the credibility of Plaintiff's subjective complaints. The ALJ noted that Plaintiff participated in activities that were inconsistent with his complaints of disabling symptoms (Tr. 18-19). The Eighth Circuit has noted that activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The evidence shows that Plaintiff was able to clean, shop, cook, use public transportation to travel to unfamiliar places, pay his bills, care appropriately for his personal grooming and hygiene needs (Tr. 16, 132, 133). Plaintiff was also able to care for his children when they were with him (Tr. 16, 131, 133, 253). Plaintiff also attended after-school activities for his children (Tr. 16, 45, 131, 133). The evidence also shows that Plaintiff played golf, went camping and boating, and went to the race track once per month (Tr. 19, 46-47). Based on the evidence, the ALJ concluded that Plaintiff's ability to perform a wide range of daily activities demonstrated a high level of adaptive functioning, thereby establishing that Plaintiff was only "moderately impaired" in his ability to perform daily activities (Tr. 19). Plaintiff's ability to engage in many normal daily living activities provides evidence which "further confirms" the ability to work on a daily basis in the national economy. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000). See also 20 C.F.R §§ 404.1529(c)(3)(I), 416.929(c)(3)(I). See also Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999) (activities such as driving his children and wife to school, shopping, visiting his mother, taking a break with his wife, watching television, and playing cards were inconsistent with plaintiff's complaints of

4

disabling pain); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Plaintiff's ability to grocery shop, drive, and provide child care is inconsistent with claims of disabling pain. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir.1996) (grocery shopping, driving, and daily child care inconsistent with claims of disabling pain).

The ALJ additionally considered evidence that Plaintiff performed some work activity during the period he alleged he was disabled (Tr. 13, 35). At the hearing, Plaintiff testified that his brother employed him on occasion doing light maintenance work, carpentry, and siding work (Tr. 13, 35). The ALJ noted this testimony and observed that Plaintiff's performance of these types of work during the same period he alleged he was disabled was inconsistent with his assertions of physical and mental impairments that allegedly prevented him from working (Tr. 18). Work performed during any period in which Plaintiff alleged that he was under a disability may demonstrate an ability to perform substantial gainful activity. See 20 C.F.R. §§ 404.1571, 416.971; Naber v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). See also Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain."). The work Plaintiff performed during the period he alleged he was disabled is inconsistent with his claims of disabling symptoms and it was a proper factor for the ALJ to consider in assessing Plaintiff's credibility.

Plaintiff alleged that he lacked the ability to function socially (Tr. 19, 134). However, the evidence shows that Plaintiff had a girlfriend who was the mother of his two children (Tr. 19, 46). In a psychological examination, Plaintiff stated that he got along with his family and with people in general (Tr. 269). Moreover, the ALJ observed that at the hearing, Plaintiff had no

5

difficulty interacting with his representative and others in the hearing room, and that he displayed appropriate social behavior throughout the course of the hearing (Tr. 19). The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001), citing Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir.1993). Because Plaintiff demonstrated the ability to maintain a relationship and exhibited appropriate social behaviors at the hearing, the ALJ concluded that Plaintiff was only mildly impaired in his ability to function socially and was not impaired to a level that would preclude a significant range of work activity (Tr. 19).

The ALJ considered evidence that Plaintiff was not completely forthcoming with medical professional regarding his use of alcohol and drugs (Tr. 20). On December 23, 2003, Plaintiff was examined by James D, Reid, Ph.D. (Tr. 249-50,268-71). Dr. Reid stated that Plaintiff was "very vague and impossible to pin down" regarding his use of drugs and alcohol (Tr. 250, 268). Dr. Reid specifically stated that he did not believe Plaintiff was being forthcoming regarding his substance and alcohol problems (Tr. 268).

Finally, the ALJ observed that Plaintiff had been noncompliant with appointments, medications, and treatment recommendations from his physicians over the years (Tr. 20). For example, Plaintiff was prescribed lithium in the fall of 2002, stated in November 2002 that it was helping, but reported in January 2003 that he had stopped taking it (Tr. 295-97). Plaintiff was prescribed ibuprofen for his alleged back pain in October 2004, but refused to take it because he wanted Celebrex, a prescription that was not covered (Tr. 200, 207). On September 29, 2004, Plaintiff presented to a clinic and reported that he had been diagnosed with hypothyroidism one year prior (Tr. 205, 273). He had waited nearly one year to purchase the medication prescribed

for this condition (Tr. 205). Plaintiff failed to appear for a scheduled appointment in September 2004 (Tr. 242). In August 2004, Plaintiff was prescribed Ritalin, but did not fill his prescription (Tr. 248). Noncompliance with treatment is a proper factor in the credibility analysis. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).

Plaintiff argues that the ALJ failed to properly consider and weigh the opinions of her treating physicians, Drs. Van Eerdewegh and Wu-Evans. Pl.'s Br. at 12-20. "Where other medical assessments are supported by better or more thorough medical evidence," an ALJ may "discount or even disregard the opinion of a treating physician." Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) (citations and internal punctuation omitted). See also Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) ("[T]he ALJ need not give controlling weight to a physician's RFC assessment that is inconsistent with other substantial evidence in the record."). The ALJ provided adequate consideration of the medical evidence.

The evidence shows that Plaintiff saw Michele Van Eerdewegh for mental health treatment (Tr. 20, 216-19). In February 2004, Dr. Van Eerdewegh stated that Plaintiff's diagnoses included major depressive disorder, rule out bipolar disorder type 2, adult type attention deficit disorder, chronic posttraumatic stress disorder, past history of alcohol abuse and rule out personality disorder (Tr. 20, 219). She opined that he had a GAF that had ranged from 50 to 60 in the preceding year, and was a 50 as of December 2003 (Tr. 21, 219). Dr. Van Eerdewegh opined that Plaintiff had marked to extreme levels of limitation in his activities of daily living, moderate to extreme levels of limitation in social functioning, concentration, persistence, or pace, and that Plaintiff had experienced four or more episodes of decompensation in the past year (Tr. 21, 216-18).

7

After four months of treatment, Plaintiff's treating psychiatrist, Dr. Wu-Evans, reported Plaintiff's diagnoses as major depressive disorder, attention deficit disorder, possible history of drug and alcohol abuse, and a cluster type personality disorder (Tr. 21, 235-38). She assessed his GAF at 45 to 60 over the previous year, with a current level of 50 (Tr. 21, 238). She opined that Plaintiff had marked levels of limitation in his activities of daily living and social functioning, and a marked to extreme level of limitation in concentration, persistence, or pace (Tr. 21, 235-37). She opined that Plaintiff experienced at least three episodes of decompensation in the preceding year (Tr. 21, 237).

In considering these two opinions, the ALJ found them to be conclusory and vague (Tr. 21). The ALJ stated that contrary to the stated opinions, the treatment notes indicated that Plaintiff's symptoms respond to medications, but that he does not take his medications as prescribed (Tr. 21, 248, 296, 298). Although both doctors described extreme symptoms and marked levels of limitation in activities of daily living, other evidence described above shows that Plaintiff is independent in this area.

Finally, in assessing the weight to be given to the opinions of Drs. Van Eerdewegh and Wu-Evans, that ALJ noted that although both doctors described multiple episodes of decompensation, the evidence did not support these findings (Tr. 21). The ALJ noted that Plaintiff had not required psychiatric hospitalization, emergency room treatment, or a doctor's visit to address an episode of decompensation (Tr. 21, 38). Plaintiff argues that this was improper, erroneously implying that the ALJ imposed additional requirements to those in the regulations to establish an episode of decompensation. Pl.'s Br. at 18. In the decision, the ALJ noted that the evidence supported a finding that Plaintiff had experienced "an episode of

8

deterioration or decompensation in a work/work-like setting that was observed by a credible third party" (Tr. 20). In contrast, Drs. Van Eerdewegh and Wu-Evans both opined that Plaintiff had experienced multiple such episodes (Tr. 20-21). In stating that Plaintiff had not required psychiatric hospitalization, emergency room treatment, or a doctor's visit to address an episode of decompensation, the ALJ was simply stating that there was no medical evidence to support the doctors' opinions that Plaintiff had experienced multiple episodes of decompensation. Moreover, Plaintiff points to no evidence of record which would support the opinions in question. The ALJ did not impose additional requirements and his treatment of the opinion evidence provided by Drs. Van Eerdewegh and Wu-Evans was proper.

Plaintiff argues that the ALJ's residual functional capacity (RFC) finding was improper. Pl.'s Br. at 20-23. "An ALJ bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995)). The Eighth Circuit has noted that the relevant evidence to a RFC determination includes the medical records, observations of treating physicians and others, and an individual's own description of his limitations. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing Anderson, 51 F.3d at 779). See also Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p). Specifically, Plaintiff complains that the ALJ should have incorporated the limitations set forth in the opinions of his treating physicians, improperly relied on the opinion of a non-examining source, and failed to include all of the limitations assessed by that non-examining source. Pl.'s Br. at 20-23.

9

First, the ALJ properly discredited the opinions of Plaintiff's treating doctors as discussed above (Tr. 21). "Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole." Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (citing Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996). After evaluating the record as a whole, the ALJ found that Plaintiff's treating physicians' opinions were not fully supported by record evidence (Tr. 21). Because the ALJ properly discredited those opinions, he was not required to include the limitations set forth in those opinions in the RFC.

Second, Plaintiff alleges that the ALJ improperly relied upon the opinion of a non-examining state agency doctor, R. Rocco Cottone, Ph.D. Pl.'s Br. at 21. Administrative law judges are not bound by any findings made by State agency medical or psychological consultants. However, these findings are considered at the hearing level. When the ALJ considers these findings, he or she will evaluate them using the rules set forth in 20 C.F.R. § 404.1527 (a)-(e). Plaintiff specifically states that "the ALJ expressly relied on" Dr. Cottone's assessment. Pl.'s Br. at 21. This is a misstatement of the ALJ's decision. In the decision, the ALJ summarized Dr. Cottone's opinions, and stated that "Dr. Cottone offered a well-rationalized explanation for these findings. This assessment is consistent with the evidence of record through January 2, 2004" (Tr. 19). At no point did the ALJ state that Dr. Cottone's opinion was being given controlling weight. In fact, the ALJ specifically stated that this evidence "must be treated as expert opinion evidence of nonexamining sources and weighed along with the medical evidence from other sources. This residual functional capacity has been reached in consideration of the record as a whole, including all of the medical evidence and the testimony at the hearing"

10

(Tr. 19). The ALJ did not "rely" on this evidence as Plaintiff implies in his brief, but did consider it as she was required to do.

Finally, Plaintiff argues that the ALJ improperly failed to include all of the limitations opined to by Dr. Cottone in his hypothetical question to the vocational expert. Pl.'s Br. at 22-23. The law in this circuit is well established on this issue. Although the hypothetical question must set forth with reasonable precision the claimant's impairments, Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir. 1992), it need only include those impairments and limitations found credible by the ALJ. See Pertuis v. Apfel, 152 F.3d 1006, 1007 (8th Cir. 1998); Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997). Moreover, where all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, a court can reasonably believe that those functions that he omitted were those that were not limited. See Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003). The ALJ's decision in this case was well-reasoned and supported by the record evidence.

Plaintiff argues that this case should be reversed and remanded for an award of benefits. Pl.'s Br. at 24. However, as the Eighth Circuit stated in Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000), "[o]rdinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of 'our abundant deference to the ALJ,' remand the case for further administrative proceedings." Id., citing Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998). The Eighth Circuit has indicated that remand to allow the Secretary to fully evaluate the evidence and bring his decision into compliance with Eighth Circuit law is appropriate. See Cockerham v. Sullivan, 895 F.2d 492, 497 (8th Cir. 1990); Butler, 850 F.2d at 428-29; Raniney v. Bowen, 814 F.2d 1279, 1281-82 (8th Cir. 1987); Herbert

11

v. Heckler, 783 F.2d 128, 130-31 (8th Cir. 1986).  If this Court finds that the ALJ's decision is deficient, then remand for further consideration would be the appropriate remedy.

Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations.  Substantial evidence on the record as a whole supports the Commissioner's decision.  Accordingly, the Commissioner's decision should be affirmed.

    Respectfully submitted,

    CATHERINE L. HANAWAY
    UNITED STATES ATTORNEY

    s/ Jane Rund
    JANE RUND, Bar #47298
    Assistant United States Attorney
    111 S. 10th Street, Suite 20.333
    St. Louis, Missouri 63102
    (314) 539-2200
    (314) 539-2777 FAX

    OF COUNSEL
    Frank V. Smith, III
    Chief Counsel, Region VII
    Social Security Administration

    By
    Jennifer L. Mills, Mo. Bar #44171
    Assistant Regional Counsel

CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Michael A. Ferry, Attorney for Plaintiff, Gateway Legal Services, Inc., 200 N. Broadway, Suite 950, St. Louis, Missouri 63102.

                                              s/ Jane Rund
                                              JANE RUND #47298
                                              Assistant United States Attorney